" GOLESTAN'S FILED RESPONSE "
TO COLORADO
RULE TO SHOW CAUSE

R

**Grace Hamill**

| | |
|---|---|
| **From:** | Amir Golestan <contact@amirgolestan.com> |
| **Sent:** | Thursday, January 20, 2022 1:52 PM |
| **To:** | Jackson Chambers |
| **Subject:** | Re: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request |
| **Attachments:** | Rule to Show Cause - Golestan's Response.pdf |

Dear Ms. DeRosa,

Pursuant to Judge Jackson's December 6th, 2021 order, attached please see my response regarding the Rule to Show cause. Please confirm the receipt of my email, and let me know if you have any questions.

Many thanks,
Amir Golestan / Former Manager of Micfo

2850 Jasper Blvd.
Sullivan's Island, SC 29482
212-200-2222
contact@amirgolestan.com

**From:** Jamie Hood <james.hood@hoodlaw.com>
**Sent:** Monday, January 3, 2022 11:44 AM
**To:** Trustee@chapter7.email
**Cc:** John Radeck <john.radeck@hoodlaw.com>; Tina Gault <tina.gault@hoodlaw.com>; Christine Brimm <cbrimm@bartonbrimm.com>
**Subject:** RE: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request

Since I received an few auto-replies, I thought I would resend this to bring it back to the top of your inboxes.

**From:** Jamie Hood
**Sent:** Thursday, December 30, 2021 8:32 PM
**To:** Trustee@chapter7.email
**Cc:** John Radeck <john.radeck@hoodlaw.com>; Tina Gault <tina.gault@hoodlaw.com>; cbrimm@bartonbrimm.com
**Subject:** Fwd: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request

Good evening - we are in receipt of the email below. Can we please set up a time to talk on Monday to get some direction on how Micfo would like us to respond? We received Amir's written consent to be relieved as counsel of record. Shortly thereafter, we received the correspondence sent to you effectively resigning. At this juncture, we need direction to proceeding.

Jamie Hood
(843) 577-1223 w
(843) 324-5582 c

Begin forwarded message:

> **From:** Kerry Culpepper <kculpepper@culpepperip.com>
> **Date:** December 30, 2021 at 7:47:25 PM EST
> **To:** Jackson Chambers <Jackson_Chambers@cod.uscourts.gov>, "joshua.lee culpepperip.com"
> <joshua.lee@culpepperip.com>, John Radeck <john.radeck@hoodlaw.com>

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
1/20/2022
JEFFREY P. COLWELL, CLERK

**UNITED STATES DISTRICT COURT**
for the
**DISTRICT OF COLORADO**

---

**Millennium Funding, Inc., et al.**
*Plaintiff*

v.

**Micfo, LLC.**
*Defendant*

CIVIL CASE NO:

1:21-cv-1594-RBJ

---

## GOLESTAN'S RESPONSE TO RULE TO SHOW CAUSE

Dear Honorable R. Brooke Jackson, I'm responding to your order dated January 6th, 2022, to show cause as to why I should not be held in contempt of the Court for failing to comply with the Court's December 8th, 2021, order. I am responding to your order personally as I no longer have any affiliation with Micfo, and moreover, do not have the financial means to retain an attorney.

## PRELIMANRY BACKGROUND

1.  My name is Amir Golestan ("Golestan"). I founded Micfo, LLC ("Micfo") in 1999 in Dubai.

2.  I immigrated to the United States in 2010 and continued operating Micfo from the U.S.

3.  On May 14th, 2019, Micfo and Golestan were indicted for 20 counts of wire fraud.

4.  As a result of the indictment, Micfo lost 95% of its clients, and was left with only a few paying customers.

5.  Due to a mountain of debts and my inability to satisfy my personal creditors, on October 28th, 2019, I filed for a Chapter 11 personal bankruptcy protection.

6.  I remained the manager and sole member of Micfo until February of 2020.

7.  On February 14th, 2020, I voluntarily covered my bankruptcy to a case under Chapter 7.

8.  As a result of the conversion of my bankruptcy to a case under Chapter 7, the 100% membership interest of Micfo was assigned to the trustee of Golestan's bankruptcy estate, Michelle Vieira ("Trustee").

9.   On June 30th, 2020, the Trustee amended Micfo's operating agreement ("Operating Agreement"), hereby assigning Golestan as the manager ("Manager") of Micfo, amending the terms of the Operating Agreement and imposing limitation on the authority of the Manager. **Exhibit 1**

10.   Micfo further agreed to pay Golestan $12,000 a month in compensation for the services he rendered Micfo.

## COLORADO LAWSUIT

11.   On July 20th, 2021, the former counsels for Micfo, Hood Law Firm ("Hood Law Firm") reached out to the Trustee and her attorney, Christine Brimm ("Brimm") to advise them of the subject lawsuit, Millennium Funding v. Micfo and that response was required.

12.   On July 21st, 2021, Brimm responded "...The Trustee will not be able to employ her professionals to respond to this lawsuit on Micfo's behalf. Micfo is a separate, operating entity, which is not in bankruptcy." **Exhibit 2, at 2**

13.   On July 22nd, 2021, Hood Law Firm responded to Brimm, stating "...in reviewing the amended operating agreement of Micfo LLC, it seems that the Trustee owns 100% of Micfo. The potential entry of a judgement adverse to Micfo would have an immediate impact on the value of Micfo and the Trustee's corresponding interest. If the Trustee does not employ her professionals, Micfo will be required to retain counsel at significant expense and defend the allegations resulting in a depletion of Micfo's assets and the Trustee's interest in the same. In light of this, Micfo requests that the Trustee reconsider her refusal to employ her professionals to defend Micfo, preserve the assets of Micfo and the interest of the Trustee as the sole owner of Micfo." **Exhibit 2, at 1**

14.   On January 4th, 2022, Brimm further refused to defend Millennium Funding v. Micfo lawsuit, restating that "Micfo is a manager-managed LLC and is currently without a manager. There are already multiple judgments against Micfo, no ongoing operations, and no assets of any value. All IP addresses, which was arguably the only asset of any value, have been revoked. Micfo was convicted of 20 counts of wire fraud and is now defunct." **Exhibit 3**

15.   Despite the Trustee's assertion that Micfo is a separate entity, one that is not in the bankruptcy, has no assets, and is now defunct, the Trustee remains 100% member of Micfo and have not moved to either dissolve the company, abandon Micfo and/or her membership interest in Micfo before the bankruptcy court.

## TRUSTEE'S CONTRADICTORY POSITION

16.   The Trustee has repeatedly taken contradictory position as it relates to Micfo. It appears that the Trustee is only interested in defending claims and lawsuits related to Micfo that would adversely impact my personal bankruptcy estate.

17.     The Trustee has liquidated various assets, including real estate properties, furniture, and other assets that Micfo had substantial interest in, for the benefit of my personal bankruptcy estate, in violation of the bankruptcy code and her fiduciary duties, effectively breaking the law and prejudicing Micfo's creditors.

18.     In a correspondence dated May 18th, 2020, I informed the Trustee that Micfo extended $4MM in loans to Golestan, for various purposes, including down payments and mortgage payments for Tradd Street Property, Meggett Property, East Bay Properties, London Furniture and much more. **Exhibit 4**

19.     In a separate correspondence dated June 28th, 2021, I advised the Trustee that considering she is intending to liquidate Micfo's assets, out of abundance of caution and given her fiduciary duties I think it's important that she files a notice and inform Micfo's creditors and UCC holders of her intent. **Exhibit 5, at 2**

20.     Neither the Trustee nor her counsel followed my advice and ultimately, did not inform any of Micfo's UCC holders or creditors of their intention to liquidate Micfo's assets.

21.     In retaliation, Brimm engaged in a bullying campaign, and intimidated me for the position I had held all along. **Exhibit 5, at 1-2**

## **PENSION BENEFIT GUARANTY CORPORATION LAWSUIT**

22.     In a separate matter, Benefit Guaranty Corporation ("PBGC") brought a lawsuit against Micfo, for millions of dollars in liabilities related to Micfo's pension plan.

23.     On April 5th, 2021, Pension Benefit Guaranty Corporation ("PBGC") filed Proof of Claim 5 in the Seven/Rose Bankruptcy related to Golestan's bankruptcy in the contingent amount of $1,124,236.00 for unfunded benefit liabilities, and filed Proof of Claim 6 in an unliquidated amount for premiums due to PBGC.

24.     PBGC asserted that Seven and Rose is liable for unfunded benefit liabilities of the Micfo Cash Balance Plan (the "Pension Plan"), and for insurance premiums with respect to the Pension Plan. The Pension Plan was created by Micfo, and PBGC asserts that Seven/Rose is jointly liable with Micfo as a member of Micfo's controlled group.

25.     For background, Micfo funded and purchased an office building consisting of three separate units on East Bay Street ("East Bay Properties").

26.     Micfo operated and conducted its business out of East Bay Properties, which while were titled under a separate entity, Seven and Rose LLC, they belonged to Micfo.

27.     Micfo's balance sheets previously provided to the Trustee's accountant, Bob Faulkner ("Faulkner") reflected the facts stated above. **Exhibit 6**

28.    As recently as January 18th, 2022, the Trustee entered into a settlement agreement with PBGC, a Micfo creditor, and effectively agreed to pay $80,000 in exchange for release from and/or all claims by PBGC. **Exhibit 7**

29.    It is important to note that without PBGC's consent, the Trustee would have not been able to pass through the net proceeds of Seven and Rose bankruptcy into my personal bankruptcy estate.

30.    In order to get to this point and reach a settlement with PBGC, the Trustee was first required to terminate Micfo's pension plan, by hiring an outside consultant.

31.    Michelle Vieira wired $15,000 to Micfo's bank account for the benefit of the outside consultant. **Exhibit 8, at 2**

32.    As demonstrated, in a case of cherry-picking, the Trustee paid $95,000 in settlement and fees for the benefit of a Micfo creditor.

33.    Brimm additionally charged Seven and Rose bankruptcy estate thousands of dollars in fees for legal services she rendered the estate, for a nine-month long settlement negotiation with PBGC.

## PNC AND ASCENTIUM LAWSUIT

34.    In yet another separate matter, PNC and Ascentium, two of Micfo's creditors, had obtained multiple default judgement against Micfo.

35.    Ronald Jones ("Ron Jones") an attorney from Smith Debnam Narron Drake Saintsing & Myers, LLP, representing both PNC and Ascentium, made an appearance on behalf of his clients in my personal bankruptcy estate.

36.    On April 7th, 2021, the Trustee filed a motion to sell certain furniture and personal property belonging to Micfo. **Exhibit 9**

37.    On May 19th, 2021, Ron Jones filed an objection with the bankruptcy court, stating that "...The Trustee proposed to sell the property under her authority as 'holder of the rights and powers of sole member of Micfo'. However, members of an LLC have no property interest in the property owned by the LLC…" **Exhibit 10**

38.    On May 26th, 2021, the Trustee and PNC/Ascentium, entered a settlement agreement and subsequently a consent order, in which PNC and Ascentium would receive $15,000 in net proceeds from the sale of the furniture. **Exhibit 11**

39.    In exchange, PNC/Ascentium agreed to not participate as a petitioning creditor, nor to engage other creditors to file an involuntary bankruptcy proceeding against Micfo.

40.     Again, as demonstrated, the Trustee was open and willing to defend a Micfo lawsuit when it was going to adversely impact her efforts to liquidate Micfo's assets for the benefit of my personal bankruptcy estate.

41.     It's important to note that PNC and Ascentium were jointly considering engaging other Micfo's creditors, and act as a petitioning creditor to file an involuntary bankruptcy against Micfo. This would have adversely impacted the Trustee and her efforts, to the extent that she ensured that as part of the settlement, PNC and Ascentium are barred from taking such action.

## GOLESTAN'S RESIGNATION

42.     I became extremely concerned with the Trustee and Brimm's conduct involving Micfo.

43.     I began wondering as to why the Trustee is only defending certain Micfo cases.

44.     Despite the Trustee stating that Micfo is a separate entity, and not involved in the bankruptcy, I became concerned that she had no issues liquidating Micfo's assets without informing Micfo's creditors and UCC holders.

45.     I became increasingly concerned that the Trustee took additional steps, barring PNC and Ascentium from acting as petitioning creditor to file an involuntary bankruptcy against Micfo.

46.     In a correspondence dated October 4th, 2021, I additionally raised my concerns with Brimm regarding Micfo's cash flow situation. I stated that Micfo has paid $5,000 to Hood Law Firm to represent Micfo in Millennium Funding v. Micfo, and that the entire amount had already been utilized. **Exhibit 12**

47.     On various calls with the Hood Law Firm, I raised my concerns stated above. Hood Law Firm shared the same sentiment and was equally baffled as to why the Trustee would not defend Micfo when she is clearly a 100% member and owner of Micfo.

48.     I further informed the Hood Law Firm that Micfo is running out of money and that we need to keep the costs down. We discussed potentially entering a default judgement.

49.     Given all the concerns stated above, coupled with the fact that Micfo owed me money, on December 29th, 2021, I handed over my resignation to the Trustee. **Exhibit 13**

50.     Considering I was not being paid by Micfo, and the Trustee as the 100% member and owner of Micfo had no interest in defending the company in Millennium Funding v. Micfo, I ceased rendering any additional services to Micfo, including producing any documents to third parties.

51.     All along I acted in good faith, for the benefit of Micfo's creditors. However, I was constantly faced with opposition from the Trustee, who is the 100% member and owner of Micfo.

## **CONCLUSION**

For the reasons stated above, I respectfully ask this Honorable Court to (1) not find me in contempt of December 8th, 2021, order (2) appoint a special counsel to investigate the joint conduct of Trustee and Brimm referenced above; (3) grant such other and further relief as is equitable and just.

January 20th, 2022                                  Respectfully Submitted.

By: _____
AMIR GOLESTAN, Pro Se
2850 Jasper Blvd.
Sullivan's Island, SC 29482
(212) 200-2222 / contact@amirgolestan.com

# Exhibit 1

# AMENDED AND RESTATED OPERATING AGREEMENT FOR MICFO, LLC

## RECITAL

**WHEREAS**, by Articles of Organization filed with the Secretary of State of Nevada on July 5, 2005, MICFO, LL (the "LLC") was formed as a Nevada limited liability company; and

**WHEREAS**, Amir Golestan was the original sole member of the LLC; and

**WHEREAS**, Amir Golatan Parast a/k/a Amir Golestan filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States District Court for the District of South Carolina, Case No. 19-05657-jw (the "Bankruptcy"), on October 28, 2019; and

**WHEREAS**, the Bankruptcy was converted to Chapter 7 of the Bankruptcy Code on February 14, 2020, at which time Michelle L. Vieira was duly appointed as the Chapter 7 Trustee for the Bankruptcy estate; and

**WHEREAS**, at the time of the filing of the Bankruptcy, Amir Golestan was the sole member of the LLC; and

**WHEREAS**, as a result of the Bankruptcy, the 100% membership interest of Amir Golestan became and is property of the Bankruptcy estate; and

**WHEREAS**, Michelle L. Vieira, as Chapter 7 Trustee of the Bankruptcy estate ("Trustee"), has succeeded to the rights, title and interest as sole member of the LLC; and

**WHEREAS**, the Trustee, being the sole member of the LLC, desires to amend the Operating Agreement of Micfo, LLC through this instrument;

**NOW, THEREFORE**, the undersigned, being the sole member of the LLC and holding the 100% membership interest in the LLC, hereby agrees as follows:

## AGREEMENT

This Amended and Restated Operating Agreement for Micfo, LLC is hereby adopted and agreed to effective as of June 30, 2020 by the sole member of the LLC. The sole member of the LLC is Michelle L. Vieira, as Chapter 7 Trustee for Amir Golastan Parast a/k/a Amir Golestan.

## SECTION 1

<u>Effective date of Agreement; Members;
Procedures for Admitting Additional Members</u>

1.1     <u>Effective date of Agreement</u>. This Amended and Restated Agreement shall be effective as of the 30th day of June, 2020 (the "Effective Date").

1.2    <u>Member</u>.  The sole member (the "Member") of the LLC is as follows:

| Member | Percentage Interest (%) |
|---|---|
| Michelle L. Vieira, | 100.00 |
| Chapter 7 Trustee for | |
| Amir Golestan Parast a/k/a Amir Golestan | |
| P.O. Box 1480 | |
| Murrells Inlet, SC 29576 | |

1.3    <u>Procedure for admission of additional members</u>.  Additional members shall be admitted to the LLC only upon their signing this Agreement (as it may be amended by the Member from time to time) or an amendment in which they agree to all of the provisions hereof.

## SECTION 2

### Name of LLC; Purpose; Requirements

2.1    <u>LLC name</u>.  The business and affairs of the LLC shall be conducted solely under the name set forth in the Articles of Organization (as it may be amended by the Member from time to time).

2.2    <u>LLC purpose</u>.  The business and purpose of the LLC shall consist of the following:

(a)  to engage in any lawful business whatsoever that a limited liability company may engage in under the Nevada Limited Liability Company Act; and

(b)  to engage in such other lawful activities permitted to limited liability companies by the Nevada Limited Liability Company Act as are incidental, necessary or appropriate to the foregoing.

## SECTION 3

### Fiscal Year

The fiscal year of the LLC shall be the calendar year.

## SECTION 4

### Capital Contribution

4.1    <u>Transfer of cash and assets</u>.  The Member has transferred to the LLC as the sole and entire consideration for its membership in the LLC (its "Membership") $100.00 (the "Contribution").

4.2    <u>No duty to make additional transfers</u>.  Except for the Contribution, the Member shall have no right or duty to contribute or otherwise to transfer to the LLC any cash or non-cash property as consideration for its Membership or for any other reason.

4.3     <u>Limitation of liability</u>.  The Member is not liable for any obligations of the LLC, whether arising in contract, tort or otherwise, solely by reason of being the LLC's sole member and/or its manager.  However, the member remains liable for payment of its Contribution as set forth in Section 4.1 or as otherwise provided in this Agreement.

## SECTION 5

<u>Allocations and Distributions; Draws</u>

5.1     <u>Allocations of profits and losses and allocations of distributions</u>.  Only the Member shall be entitled to allocations of LLC profits and losses and to allocations of distributions of LLC assets, including LLC profits.  No other person or entity shall have any right to any such allocations.

5.2     <u>Distributions</u>.  Only the Member shall be entitled to distributions of assets from the LLC, and the Member may cause the LLC to distribute its assets to it in such amounts and at such times as it may decide in its sole discretion, subject only to any restrictions set forth in the Nevada Limited Liability Company Act.

## SECTION 6

<u>Sole Manager; LLC Management and Decision-Making; Rights of Member</u>

6.1     <u>Manager</u>.  Amir Golestan shall be the sole manager of the LLC (the "Manager").  Subject to the limitations set forth in Section 6.2, the Manager alone in its sole reasonable discretion shall make all decisions relating to the LLC, and the Manager alone shall have the power and authority to bind the LLC with third parties.  However, the Member in its sole discretion may replace the sole manager of the LLC at any time and from time to time with or without notice.

6.2     <u>Limitations on Authority of Manager</u>.  Notwithstanding any other provisions of this Agreement, the authority granted to the Manager is limited as follows:

a.  There shall be no sale, transfer, exchange or other disposition of registration rights to IP numbers without the written approval of the Member by resolution.  Any transfer request to the American Registry for Internet Numbers (ARIN) must be accompanied by a duly executed resolution by the Member authorizing such request.  The Member will not approve the sale, transfer, exchange or other disposition of registration rights to IP numbers if the transfer request to ARIN was not accompanied by a Member resolution.
b.  Other than in the ordinary course of regular business operations of the LLC, there shall be no sale, transfer, exchange or other disposition of any of the LLC's assets, whether occurring as part of a single or multiple transactions, without the written approval of the Member by resolution.
c.  There shall be no merger of the LLC with another business entity without the written approval of the Member by resolution.

d. The Manager is not authorized to take any action which would make it impossible to carry on the ordinary business of the LLC.

e. Other than employees who are employed by the LLC as of the date of this Agreement, no employee, consultant, or independent contractor shall be hired without the written approval of the Member by resolution.

f. The compensation of the Manager shall not exceed $12,000 per month without the written approval of the Member by resolution.   The compensation of other employees existing at the time of this Agreement shall not increase above the compensation level paid as of February 14, 2020, without the written approval of the Member by resolution.

g. The Manager shall not pay personal expenses from LLC receipts.

h. No LLC funds or credit may be spent or used or reimbursed for business travel without the prior written approval of the Member by resolution.

i. The Manager shall report to the Member, weekly, all accounts receivable owed to the LLC, cash receipts paid to the LLC, and cash disbursements paid by the LLC, including compensation to the Manager.

j. If a Chief Financial Officer (CFO) is appointed by the Member, then the Manager shall report to the CFO with regard to all financial matters of the LLC.


6.3      Rights of Member.  In addition to rights provided under law and as otherwise provided in this Agreement, the Member shall have the following rights:

a. The Member shall have the sole right and authority to authorize a petition for relief under the Bankruptcy Code.

b. The Member shall have the right to inspect the LLC books and records at any time upon request to the Manager.

c. The Member shall have the right and authority to appoint a CFO to exercise control over the finances of the LLC.

d. Except as otherwise allowed in the ordinary course of business operations, the Member shall have the sole and exclusive right and authority to authorize the sale, liquidation, transfer, exchange or disposition of any the assets of the LLC.

## SECTION 7

### Transfers of LLC Memberships and Interests

The Member shall have exclusive and absolute discretion to transfer all or any portion of its membership rights to any person at any time, and it may make such transfer under any terms and conditions which it deems appropriate.

## SECTION 8

### Pledges of Memberships and Interests

The Member shall have exclusive and absolute discretion to pledge all or any portion of its membership rights to any person at any time, and it may make any such pledge under any terms and conditions which it deems appropriate.

## SECTION 9

### Admission of Additional Members

The Member shall have sole and absolute discretion as to whether and under what terms and conditions to admit any person or entity as an additional member of the LLC.

## SECTION 10

### Dissolution

The LLC shall be dissolved immediately upon the Member's deciding to dissolve it, which decision shall be within its sole and absolute discretion.

## SECTION 11

### Term and Termination

The term of this Agreement shall begin on the Effective Date and shall end upon the earlier of:

(a)     the date on which the LLC ceases to exist under this Agreement or under other applicable laws; or

(b)     the date on which the Member determines to terminate the Company.

## SECTION 12

The original Member, Amir Golestan, has acknowledged that its membership interest in the LLC is a security and, further, acknowledged that the LLC is relying on the original Member's representations and warranties as set forth in this Section 12, in part, as the basis for exemptions from the registration requirements of federal and state securities laws that are applicable to its membership interests in the LLC.

12.1     Residence.  The Member is a South Carolina residence.

12.2     Investment intent.  The Member is acquiring its membership interest in the LLC for investment for its own account with no present intent to directly or indirectly resell, transfer, distribute or participate in a distribution of its membership interest or any portion thereof.

12.3     No representations from LLC.  The Member acknowledges and agrees that it is not acquiring the Membership Interests based upon any representation, oral or written, by the LLC or

any representative of the LLC with respect to the future value of, income from, or tax consequences relating to the Membership Interests but rather upon an independent examination and judgment as to the prospects of the LLC. Further, the Member acknowledges that no federal or state administrative entity responsible for securities registration or enforcement has made any recommendations or endorsement of its membership interests in the LLC or any findings as to the fairness of an investment in the LLC.

12.4    <u>Knowledge and experience</u>.  The Member has sufficient knowledge and experience in business and financial matters to evaluate the LLC, to evaluate the risk of an investment in the LLC, to make an informed investment decision with respect thereto, and to protect the Member's interest in connection with the Member's acquisition of its membership interest in the LLC.

12.5    <u>Access to information</u>.  The Members has received and reviewed such financial information and records of the LLC as the Member deems necessary, and the LLC has made available to the Member or the Member's purchaser representatives the opportunity to ask questions of, and to receive answers from, representatives of the LLC and to obtain additional information relative to the LLC and the undersigned's investment therein to the extent the LLC possesses such information or could acquire it without unreasonable effort or expense. All such materials and information requested by the undersigned and/or the undersigned's purchaser representatives have been made available and examined by the undersigned and/or the undersigned's purchaser representatives.

12.6    <u>Ability to bear risk</u>.  The Member can bear the economic risk of losing its entire investment in its membership interest in the LLC.  The Member's proposed investment in its membership interest in the LLC is not disproportionate to its net worth.  The Member has adequate means of providing for its current needs and possible contingencies without regard to its investment in its membership interest in the LLC, and does not have any need for liquidity in its investment in its membership interest in the LLC.

## SECTION 13

### Miscellaneous Provisions

13.1    <u>Entire Agreement</u>.  This Agreement contains the complete agreement of the Member, concerning its subject matter, and it supersedes any earlier agreements among the Members and/or Manager, whether written or oral, concerning its subject matter.

13.2    <u>Amendments</u>.  No amendment of this Agreement shall be valid unless it is signed by all Member(s).  No amendment of the Articles shall be effective unless signed by the Member(s).

13.3    <u>Applicability of the Nevada Limited Liability Company Act</u>. Except as otherwise expressly provided in this Agreement and in the Articles, all provisions of the Nevada Limited Liability Company Act as now in effect and as amended from time to time shall apply to the Agreement as if fully incorporated herein.

13.4    Notices.  All notices under this Agreement shall be in writing.  Such notices shall be sent by fax or by registered or certified U.S. mail, return receipt requested, or hand-delivered, to the Member(s) at their respective address as stated under Section 1.2 of this Agreement.  A Member may change its address for purposes of this Section 13.4 at any time upon reasonable notice to the other Members and the Company.  Notices shall be deemed to have been received when actually received.

13.5    Governing Law.  This Agreement shall be governed exclusively by the laws of the State of Nevada.

13.6    Forum.  All disputes under or relating to this Agreement shall be resolved in the courts of the State of South Carolina.

13.7    Captions.  Captions in this Agreement are for convenience only and shall be deemed irrelevant in construing its provisions.

13.8    Duties of care and loyalty.  The Member(s) and the Manager shall act in a manner each believes in good faith to be in the best interests of the LLC and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.  The Member(s) shall not be liable to the LLC or to any other member for any loss or damage sustained by the LLC or another Member unless the loss or damage is the result of the Member's intentional misconduct or knowing violation of law or a transaction for which the Member received a personal benefit in violation or breach of any provision of this Agreement.  The Member(s) shall have no duty of loyalty in its capacity as the LLC's member or manager.

13.9    Incorporation of Articles of Organization, etc.  The LLC's Articles of Organization and all exhibits referred to in this Agreement are hereby incorporated in the Agreement and made an integral part hereof.

## SIGNATURE AND DATE

In witness of their acceptance of the above terms and conditions, the Member(s) have duly signed and dated this Agreement as of this 30 day of June, 2020.

By: _____
Michelle L. Vieira, Chapter 7 Trustee for
Amir Golestan Parast a/k/a Amir Golestan,
Its Sole Member

SWORN TO AND SUBSCRIBED before me on
this ___ day of _____, 2020.

_____
NOTARY PUBLIC FOR SOUTH CAROLINA
My Commission Expires: _____

# Exhibit 2

**Amir Golestan**

---

**Subject:** Re: Millennium Funding v. Micfo lawsuit
**Date:** Thursday, July 22, 2021 at 8:54:48 PM Eastern Daylight Time
**From:** Jamie Hood <james.hood@hoodlaw.com>
**To:** Christine Brimm <cbrimm@bartonbrimm.com>
**CC:** trustee@chapter7.email <trustee@chapter7.email>, Amir Golestan <contact@amirgolestan.com>

Amir informed me that there is no policy of insurance available to cover the claims alleged in the complaint.

Jamie Hood
(843) 577-1223 w
(843) 324-5582 c

> On Jul 22, 2021, at 8:53 PM, Christine Brimm <cbrimm@bartonbrimm.com> wrote:
>
> Jamie, my understanding from the attorney who brought this action is that he is willing to pursue insurance recoveries only. I previously asked Amir if there was a policy in place that might cover this but I did not get a response. Please advise.
>
> Sent from my iPhone
>
> On Jul 22, 2021, at 8:45 PM, Jamie Hood <james.hood@hoodlaw.com> wrote:
>
> Christine - in reviewing the amended operating agreement of Micfo LLC, it seems that the Trustee owns 100% of Micfo. The potential entry of a judgment adverse to Micfo would have an immediate impact on the value of Micfo and the Trustee's corresponding interest. If the Trustee does not employ her professionals, Micfo will be required to retain counsel at significant expense and defend the allegations resulting in a depletion of Micfo's assets and the Trustee's interest in the same. In light of this, Micfo requests that the Trustee reconsider her refusal to employ her professionals to defend Micfo, preserve the assets of Micfo and the interest of the Trustee as the sole owner of Micfo.
>
> Jamie Hood
> (843) 577-1223 w
> (843) 324-5582 c
>
> > On Jul 21, 2021, at 11:08 AM, Christine Brimm <cbrimm@bartonbrimm.com> wrote:
> >
> > Amir Golestan is in an individual chapter 7 bankruptcy case.
> >
> > *Thank you,*
> > Christie
> >
> > **Christine E. Brimm, Esq.**
> > *Certified Specialist in Bankruptcy Law*
> > *Certified Mediator*
> > *SubChapter V Trustee*
> > **Barton Brimm, PA**
> > **803.256.6582 (office)**

**From:** Jamie Hood <james.hood@hoodlaw.com>
**Sent:** Wednesday, July 21, 2021 10:46 AM
**To:** Christine Brimm <cbrimm@bartonbrimm.com>
**Cc:** trustee@chapter7.email; Amir Golestan <contact@amirgolestan.com>
**Subject:** Re: Millennium Funding v. Micfo lawsuit

Thank you for the response. Can you please let me know what is the entity which is in bankruptcy? I apologize for the sophomoric question but having not been involved, I just don't know this.

Jamie Hood
(843) 577-1223 w
(843) 324-5582 c

> On Jul 21, 2021, at 10:14 AM, Christine Brimm
> <cbrimm@bartonbrimm.com> wrote:

Jamie,

Thank you for bringing this to our attention.  The Trustee will not be able to employ her professionals to respond to this lawsuit on Micfo's behalf.  Micfo is a separate, operating entity, which is not in bankruptcy.

*Thank you,*
Christie

**Christine E. Brimm, Esq.**
*Certified Specialist in Bankruptcy Law*
*Certified Mediator*
*SubChapter V Trustee*
**Barton Brimm, PA**
**803.256.6582 (office)**

**From:** Jamie Hood <james.hood@hoodlaw.com>
**Sent:** Tuesday, July 20, 2021 2:35 PM
**To:** Christine Brimm <cbrimm@bartonbrimm.com>
**Cc:** trustee@chapter7.email; Amir Golestan
<contact@amirgolestan.com>

**Subject:** Millennium Funding v. Micfo lawsuit

Christine

I spoke with Amir last week and learned that he and Micfo had been sued in Colorado. He shared with me that you are counsel for the Trustee that I have also copied here so I am passing along that information to you so you can handle any response for Micfo. I have also attached the service information. It appears that service was effected on July 1, 2021. According to the summons, any responsive pleading is due on or before Thursday July 22nd. After the suit was filed, the Plaintiff subsequently dismissed the claims against Amir individually. By copy of this email, please confirm that either you, the trustee or someone on behalf of the trustee will respond to the complaint. Of course, Amir is available to provide any information that is needed. If you need my assistance to secure an extension of time, I am glad to reach out to counsel for the plaintiff.

A copy of the lawsuit, service information, and the notice of dismissal of Amir without prejudice are attached to this email for your reference.

**Jamie Hood**
**Partner**
**James.Hood@hoodlaw.com**

**<image002.jpg>**
**172 Meeting Street**
**P.O. Box 1508**
**Charleston, SC 29401**

**Direct: (843) 577-1223**
**Fax:     (843) 722-1630**
**https://link.edgepilot.com/s/bd2fb96a/1Se8xTGGTEKGJQp_qC5j0w?u=http://www.hoodlaw.com/**

CONFIDENTIALITY NOTICE:  This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, and is legally privileged.  This email (and any associated files) contains confidential and/or legally privileged information from the Hood Law Firm, LLC, intended solely for the use of the individual(s) named in this email.  If you are not the intended recipient, you are notified that any disclosure, copying, distribution, or the taking of any action based or in reliance upon the contents of this email (and any associated files) is strictly prohibited.  If you have received this email in error, please destroy this email and notify our office via reply email.

# Exhibit 3

**Amir Golestan**

| | |
|---|---|
| **Subject:** | RE: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request |
| **Date:** | Thursday, January 6, 2022 at 12:03:11 PM Eastern Standard Time |
| **From:** | Jamie Hood <james.hood@hoodlaw.com> |
| **To:** | Christine Brimm <cbrimm@bartonbrimm.com>, Trustee@chapter7.email <Trustee@chapter7.email>, amir@micfo.com <amir@micfo.com>, contact@amirgolestan.com <contact@amirgolestan.com> |
| **CC:** | John Radeck <john.radeck@hoodlaw.com>, Tina Gault <tina.gault@hoodlaw.com> |
| **Attachments:** | Activity in Case 1:21-cv-01594-RBJ Millennium Funding, Inc. et al v. Micfo, LLC et al Order to Show Cause.eml |

Attached is the Court's order just entered. The text of the docket text is pasted below for ease of reference. Please note the reference directed to MICFO and its manager. I added another email address I had for Amir. I am not sure either of these will get to him. I will leave that to Christine.

**Docket Text:**
**ORDER TO SHOW CAUSE: returnable by MICFO LLC and its manager/managing member as of December 8 through December 22, 2021 why it and he should not be held in contempt of court for failing to comply with the Court's December 8, 2021 order. Show Cause Response due by 1/20/2022. by Judge R. Brooke Jackson on 1/6/22. (jdyne, )**

**From:** Jamie Hood
**Sent:** Thursday, January 6, 2022 11:48 AM
**To:** Christine Brimm <cbrimm@bartonbrimm.com>; Trustee@chapter7.email; amir@micfo.com
**Cc:** John Radeck <john.radeck@hoodlaw.com>; Tina Gault <tina.gault@hoodlaw.com>
**Subject:** RE: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request

Christine

We had a telephonic hearing today regarding MICOF's failure to respond to the Court's order to produce certain documents by 12/22/21. The Plaintiff has requested the Court enter an order holding MICFO in contempt and strike its answer and enter a default. Plaintiff also asked the court to enter a contempt order specifically holding Amir in contempt for failing to respond as of 12/22/21 when he was still the manager of MICFO. I opposed holding an individual in contempt, explained that he is not a party, if he were, the case would have triggered the bankruptcy issues, and that he is no longer in a position to provide the requested documents or comply with any court order.

The Court indicated it would enter a Rule to Show Cause ordering MICFO and potentially Amir, to appear and explain why it should not be held in contempt. From the tenor of the hearing, the Court is going to look at also including Amir individually in its order.

The instructed us to file the Motion to withdraw as counsel which he will sign. We will file that today.

I have included Amir in this email since the relief sought includes him individually.

Upon receipt of the order relieving us as counsel of record, I will forward the same and we will proceed with

closing our file.

Please let me know if you have any questions.

Jamie

**From:** Christine Brimm <cbrimm@bartonbrimm.com>
**Sent:** Tuesday, January 4, 2022 10:50 AM
**To:** Jamie Hood <james.hood@hoodlaw.com>; Trustee@chapter7.email
**Cc:** John Radeck <john.radeck@hoodlaw.com>; Tina Gault <tina.gault@hoodlaw.com>
**Subject:** RE: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request

Jamie,

Micfo is a manager-managed LLC and is currently without a manager. There are already multiple judgments against Micfo, no ongoing operations, and no assets of any value. All IP addresses, which was arguably the only asset of any value, have been revoked. Micfo was convicted of 20 counts of wire fraud and is now defunct.

> *Thank you,*
> *Christie*

> **Christine E. Brimm, Esq.**
> *Certified Specialist in Bankruptcy Law*
> *Certified Mediator*
> *SubChapter V Trustee*
> **Barton Brimm, PA**
> **803.256.6582 (office)**

**From:** Jamie Hood <james.hood@hoodlaw.com>
**Sent:** Monday, January 3, 2022 11:44 AM
**To:** Trustee@chapter7.email
**Cc:** John Radeck <john.radeck@hoodlaw.com>; Tina Gault <tina.gault@hoodlaw.com>; Christine Brimm <cbrimm@bartonbrimm.com>
**Subject:** RE: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request

Since I received an few auto-replies, I thought I would resend this to bring it back to the top of your inboxes.

**From:** Jamie Hood
**Sent:** Thursday, December 30, 2021 8:32 PM
**To:** Trustee@chapter7.email
**Cc:** John Radeck <john.radeck@hoodlaw.com>; Tina Gault <tina.gault@hoodlaw.com>; cbrimm@bartonbrimm.com
**Subject:** Fwd: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request

Good evening - we are in receipt of the email below. Can we please set up a time to talk on Monday to get some direction on how Micfo would like us to respond? We received Amir's written consent to be relieved as counsel of record. Shortly thereafter, we received the correspondence sent to you effectively resigning. At this juncture, we need direction to proceeding.

Jamie Hood

(843) 577-1223 w
(843) 324-5582 c

Begin forwarded message:

> **From:** Kerry Culpepper <kculpepper@culpepperip.com>
> **Date:** December 30, 2021 at 7:47:25 PM EST
> **To:** Jackson Chambers <Jackson_Chambers@cod.uscourts.gov>, "joshua.lee culpepperip.com"
> <joshua.lee@culpepperip.com>, John Radeck <john.radeck@hoodlaw.com>
> **Cc:** Jamie Hood <james.hood@hoodlaw.com>, Tina Gault <tina.gault@hoodlaw.com>
> **Subject: RE: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request**
>
> CC: John Radeck, James Hood, Tina Gault, Joshua Lee
>
> Dear Ms. DeRosa,
>
> Pursuant to Judge Jackson's Practice Standards, in lieu of filing a motion, I am writing to request
> a telephonic hearing regarding a continued discovery dispute in the above captioned case.
>
> In the Court's order of 12/8/2021 (Doc. #26), Defendant was ordered to formally respond to
> Plaintiffs Request for Production of Documents within two weeks (by 12/22/2021). Defendant
> has not responded. Rather, Defendant's counsel has informed Plaintiff's counsel that they
> intend to move to withdraw their representation.
>
> Plaintiffs respectfully request a telephone hearing to discuss the discovery issue or instructions
> concerning whether Plaintiffs should proceed to file a formal motion requesting that Defendant
> and its officer Amir Golestan be held in contempt.
>
> Best regards,
>
> Kerry Culpepper
>
>
>
>
> **From:** Jackson Chambers <Jackson_Chambers@cod.uscourts.gov>
> **Sent:** Tuesday, November 23, 2021 10:24 AM
> **To:** joshua.lee culpepperip.com <joshua.lee@culpepperip.com>; John Radeck
> <john.radeck@hoodlaw.com>; Jackson Chambers <Jackson_Chambers@cod.uscourts.gov>
> **Cc:** kculpepper culpepperip.com <kculpepper@culpepperip.com>; Jamie Hood
> <james.hood@hoodlaw.com>; Tina Gault <tina.gault@hoodlaw.com>
> **Subject:** RE: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request
>
> I'll put you down for then. A minute order to confirm will enter shortly.
>
> Mary DeRosa
> Judicial Assistant to Hon. R. Brooke Jackson
> U.S. District Court District of Colorado
> 901 19th Street
> Denver, CO 80294

303-844-4694

**From:** joshua.lee culpepperip.com <joshua.lee@culpepperip.com>
**Sent:** Tuesday, November 23, 2021 11:26 AM
**To:** John Radeck <john.radeck@hoodlaw.com>; Jackson Chambers
<Jackson_Chambers@cod.uscourts.gov>
**Cc:** kculpepper culpepperip.com <kculpepper@culpepperip.com>; Jamie Hood
<james.hood@hoodlaw.com>; Tina Gault <tina.gault@hoodlaw.com>
**Subject:** RE: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request

**CAUTION - EXTERNAL:**

December 8th at 8:30am is great. Thank you.

Best Regards,
Joshua Lee
Attorney | Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
US Tel 1-808-464-4047

********************************************************************
This message is intended only for the use of the entity to which it is addressed and may
contain confidential and privileged information.

If the reader of this message is not the intended recipient, kindly delete this message
and notify the sender.
********************************************************************

**From:** John Radeck <john.radeck@hoodlaw.com>
**Sent:** Tuesday, November 23, 2021 6:33 AM
**To:** Jackson Chambers <Jackson_Chambers@cod.uscourts.gov>; joshua.lee culpepperip.com
<joshua.lee@culpepperip.com>
**Cc:** kculpepper culpepperip.com <kculpepper@culpepperip.com>; Jamie Hood
<james.hood@hoodlaw.com>; Tina Gault <tina.gault@hoodlaw.com>
**Subject:** RE: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request

December 8th is the only date I have available.

Thank you,

John

**From:** Jackson Chambers <Jackson_Chambers@cod.uscourts.gov>
**Sent:** Tuesday, November 23, 2021 11:28 AM
**To:** joshua.lee culpepperip.com <joshua.lee@culpepperip.com>; Jackson Chambers
<Jackson_Chambers@cod.uscourts.gov>

Cc: kculpepper culpepperip.com <kculpepper@culpepperip.com>; Jamie Hood
<james.hood@hoodlaw.com>; John Radeck <john.radeck@hoodlaw.com>; Tina Gault
<tina.gault@hoodlaw.com>
Subject: RE: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request

Good morning,

We have time available for a short (no more than 30 minute) conference on 12/1, 12/2, 12/7 or
12/8 at 8:30 a.m. Please confer and then let me know which date works best.

Thanks,

Mary DeRosa
Judicial Assistant to Hon. R. Brooke Jackson
U.S. District Court District of Colorado
901 19th Street
Denver, CO 80294
303-844-4694

From: joshua.lee culpepperip.com <joshua.lee@culpepperip.com>
Sent: Monday, November 22, 2021 3:05 PM
To: Jackson Chambers <Jackson_Chambers@cod.uscourts.gov>
Cc: kculpepper culpepperip.com <kculpepper@culpepperip.com>; 'Jamie Hood'
<james.hood@hoodlaw.com>; John Radeck <john.radeck@hoodlaw.com>; Tina Gault
<tina.gault@hoodlaw.com>
Subject: Case 1:21-cv-01594-RBJ Discovery Dispute Hearing Request

CAUTION - EXTERNAL:

CC: Kerry Culpepper, John Radeck, James Hood, Tina Gault

Dear Ms. DeRosa,

Pursuant to Judge Jackson's Practice Standards, in lieu of a motion to compel, I am writing to
request a telephonic hearing regarding a discovery dispute in the above captioned case.

Despite conferral with opposing counsel, Plaintiffs have not received anything in response to its
Request for Production pursuant to FED. R. CIV. P. 26(A)(1) dated 9/15/2021.

Plaintiffs respectfully request a telephone hearing to resolve the discovery issue.


Best Regards,
Joshua Lee
Attorney | Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
US Tel 1-808-464-4047

*********************************************************************
This message is intended only for the use of the entity to which it is addressed and may contain confidential and privileged information.

If the reader of this message is not the intended recipient, kindly delete this message and notify the sender.
*********************************************************************

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

Exhibit 4

## Amir Golestan

**Subject:** Marital Tax Liabilities
**Date:** Monday, May 18, 2020 at 4:26:12 PM Eastern Daylight Time
**From:** Amir Golestan <amir@micfo.com>
**To:** Michelle Vieira <Trustee@chapter7.email>
**CC:** Christine Brimm <cbrimm@bartonbrimm.com>
**BCC:** Amir Golestan <amir@micfo.com>

Michelle,

I hope you had a great weekend.

I wanted to follow-up regarding close to $2MM in marital tax liabilities. As indicated in my tax filings, Micfo extended close to $4MM in loans to Golestans to support their life style. The loan was used to fund the parties' lifestyle for (without any limitation);

- Tradd Street property (down payment and mortgage payments)
- Meggett property (down payment and mortgage payments)
- East Bay properties (down payment and mortgage payments)
- London Furniture
- And much more...

While the opposing party can cherry-pick what they want, I want to make my position clear that if they deem an asset as marital, the debt associated with the asset should also be considered as marital. Alternatively if Kristin doesn't want to be responsible for half of the $2MM in tax liabilities, they should waive any claim to Tradd Street, East Bay Properties and London furniture. Only then perhaps I will agree to look at their close to $1.8MM in claims against the estate.

I have all my docks in the row for the following week in an event an agreement is not reached. My first course of action would be requesting a deposition of Kristin and Sam Becker individually both in family and bankruptcy courts. Mr. Savage will likely make special appearance and jointly conduct the depositions with me. Parallel to that I will be launching my blog to go public with all the material I have on them.

As always, I wanted to be open and transparent about my next obvious moves.

Many thanks,
Amir.

# Exhibit 5

**Amir Golestan**

| | |
|---|---|
| **Subject:** | Re: Meggett Furniture You Are Keeping |
| **Date:** | Monday, June 28, 2021 at 2:20:19 PM Eastern Daylight Time |
| **From:** | Amir Golestan <contact@amirgolestan.com> |
| **To:** | Christine Brimm <cbrimm@bartonbrimm.com> |
| **CC:** | Michelle Vieira <Trustee@chapter7.email> |
| **BCC:** | Amir Golestan <contact@amirgolestan.com> |
| **Attachments:** | image001.jpg |

Christie,

As the member of Micfo, I had full and legal authority to make any kind of investments, including purchase of antique furniture and paintings. Never ever did I mention those items were for my personal use. That was a statement made by you, not me. Those items were merely stored in the attic and displayed at my personal residence, just the same way at times Micfo servers/hardware were stored at my residence, including the servers which I moved after Meggett property was sold.

I had also previously disclosed to you that Micfo funded down payments of both Meggett and Tradd Street properties. I'm surprised you didn't raise the issue of tax and/or bankruptcy schedules earlier then. Furthermore, on my bankruptcy scheduled I listed many items that were not owned by me personally, including Micfo and its channel partners. I had to disclose all the assets controlled by me, directly or indirectly. That was out of abundance of caution and per my bankruptcy attorney's advice. This includes The London furniture which was also funded by Micfo as evident in the QuickBooks files I had shared with you and your CPA. There were internal loans issued between various companies and all those were evident under due to/from [insert company name]. I may also object to sell of any additional London furniture based on these facts.

I appreciate your advice on consulting my attorneys regarding this matter. My position was taken after I consulted them. I am an open book and there's certainly nothing me or my attorneys are concerned with.

My offer remains at $20,000.00.

Many thanks,
Amir.

---

**From:** Christine Brimm <cbrimm@bartonbrimm.com>
**Date:** Monday, June 28, 2021 at 1:55 PM
**To:** Amir Golestan <contact@amirgolestan.com>
**Cc:** Michelle Vieira <Trustee@chapter7.email>
**Subject:** RE: Meggett Furniture You Are Keeping

Amir,

I know this must be frustrating. However, the other items that you have mentioned that were sold did not have a third-party who provided an opinion as to value like the furniture at Meggett. This is more akin to the watch sale, where we had a third-party provide a value. Also, the estate is already making arrangements to pick up the other items in storage, so we do not have some of the same considerations as were present in the other instances you mentioned.

Your suggestion that items purchased for your personal and family use are owned by Micfo raises some issues concerning the disclosures in your sworn bankruptcy schedules and statements. You

may wish to consult with a bankruptcy lawyer before taking that position.  Also, you might wish to address these matters with your criminal counsel and your tax attorney.

If you would like to remove the framed door from your list, the Trustee is willing to sell the other items to you for a total of $29,758.50, which allows for a 10% discount.

*Thank you,*
Christie

**Christine E. Brimm, Esq.**
*Certified Specialist in Bankruptcy Law*
*Certified Mediator*
*SubChapter V Trustee*
**Barton Brimm, PA**
**803.256.6582 (office)**

**From:** Amir Golestan <contact@amirgolestan.com>
**Sent:** Monday, June 28, 2021 12:02 PM
**To:** Christine Brimm <cbrimm@bartonbrimm.com>
**Cc:** Michelle Vieira <Trustee@chapter7.email>
**Subject:** Re: Meggett Furniture You Are Keeping

Christie,

Thank you for your email.

The offer on Meggett property was $1,300,000 including the furniture. The trustee was prepared to accept the offer which meant the furniture would have been sold at no additional value to the estate. It's precisely because of my intention to purchase the home and furniture that the estate made additional $85,000 on the house and is now able to make additional proceeds from the furniture.

The trustee sold $10,000 worth of farming equipment for $4,000. She also sold $100,000+ of Micfo furniture for mere $30,000. Those were substantial discounts and is no different than the offer I made. It seems like everyone else is entitled to getting a deal and discount is considered normal course of liquidation (without trustee's fiduciary duties being questions), yet if the former owner of the property wants to also get a deal, then it becomes the issue of fiduciary duties.

My offer stands at $20,000.00. Please give me 2 weeks' notice as to when the trustee wishes to pick up the items as I will be away for a week in July.

Finally, the trustee filed a notice informing Micfo's creditors, such as PNC and Ascentium, that the estate is intending to liquidate Micfo's assets? Out of abundance of caution and given her fiduciary duties I think it's important that the she files a notice and inform all UCC holders of her intent. I will reach out to PNC and Ascentium after the furniture pieces have been picked up.

Also, I intend to fill an objection to the sale of the furniture pieces based on the facs that most of the furniture belong to Micfo, and that I should be reimbursed for my moving and storage expenses. We will let Judge Duncan decide.

Many thanks,
Amir.

**From:** Christine Brimm <cbrimm@bartonbrimm.com>

**Date:** Monday, June 28, 2021 at 11:42 AM
**To:** Amir Golestan <contact@amirgolestan.com>
**Cc:** Michelle Vieira <Trustee@chapter7.email>
**Subject:** RE: Meggett Furniture You Are Keeping

Amir,

Thank you for your prompt reply. The Trustee has valued these items within the range that she was provided by a third party, during the height of the covid lockdown when prices were severely depressed and there were concerns about whether items could be shipped to an end-purchaser. Unfortunately, per her fiduciary duty to the estate, she cannot sell the furniture and items to you for such a substantial discount.

If you have changed your mind about keeping these items, the Trustee will arrange for pickup at your home and at the storage unit.  You might recall that the Trustee had an offer to purchase the Meggett home fully furnished, and the only reason her counteroffer excluded the furniture was because you stated that you intended to purchase it from the estate. Since moving the furniture was not for the estate's benefit, the Trustee will not be able to reimburse you for your moving and storage expenses.

I will let you know as soon as we have made arrangements for pickup.  It will probably be some time in July.

*Thank you,*
Christie

**Christine E. Brimm, Esq.**
*Certified Specialist in Bankruptcy Law*
*Certified Mediator*
*SubChapter V Trustee*
**Barton Brimm, PA**
**803.256.6582 (office)**

**From:** Amir Golestan <contact@amirgolestan.com>
**Sent:** Monday, June 28, 2021 10:50 AM
**To:** Christine Brimm <cbrimm@bartonbrimm.com>
**Cc:** Michelle Vieira <Trustee@chapter7.email>
**Subject:** Re: Meggett Furniture You Are Keeping

Christie,

Thank you for your email.

I noticed that you've priced the items at the high-end of what the appraisers thought these pieces may sell for. For example, the carpets were priced between $800-$1,000. The oil paintings were priced between $2,500-5,000. Furthermore, many of the furniture pieces the estate is intending to liquidate are assets of Micfo, for which I produced supporting documents. One again I'm attaching the payment receipts of the items in question for your reference. Also as evident, Micfo paid substantially less for a number of these items, including only $4,000 for the decorative door, vs. $20,000 that you've quoted.

Bottom line is that I'm in a different place mentally and have no emotional attachments to any of these items. I'm willing to make a good-faith offer of $20,000 for all the pieces I've chosen to keep (all or nothing). I hope this is acceptable, otherwise please arrange for someone to come and take these pieces from my residence.

Page 3 of 4

I'm located at 2850 Jasper Blvd, Sullivan's Island, SC 29482. I would expect to be reimbursed for the cost of moving the furniture from Meggett property which was in excess of $5,000 + storage fee of other pieces since March. I will happily provide the receipt of my expenses if and when necessary.

Many thanks,
Amir.

---

**From:** Christine Brimm <cbrimm@bartonbrimm.com>
**Date:** Monday, June 28, 2021 at 8:41 AM
**To:** Amir Golestan <contact@amirgolestan.com>
**Cc:** Michelle Vieira <Trustee@chapter7.email>
**Subject:** Meggett Furniture You Are Keeping

Amir,

Attached is the list of furniture that you want to keep, along with the value for each item. The total comes to $53,065.  Like before, we will need to know the source of the funds for the purchase of these items from the estate.  I assume a family member is helping you with this, so please send me a signed letter from the family member committing funds for this purchase.

I would like to get the notice filed this week.

Thank you
Christie



Christine E. Brimm, Esq.
*Certified Specialist in Bankruptcy Law*
*Certified Mediator*
*SubChapter V Trustee*
BARTON BRIMM, PA
1500 Highway 17 Business North, STE 214
Surfside Beach, SC 29575
Mailing: Post Office Box 14805, Myrtle Beach, SC 29587
803.256.6582 (office)
803.779.0267 (facsimile)
www.bartonbrimm.com

# Exhibit 6

3:16 PM
05/22/19
Cash Basis

# MICFO LLC
## Balance Sheet
### As of December 31, 2018

|  | Dec 31, 18 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| JPMorgan Chase Checking xxx7711 | 2,807.82 |
| JPMorgan Chase Savings xxxx7960 | 17.59 |
| Paypal xxxxVGLS | -5.03 |
| **Total Checking/Savings** | 2,820.38 |
| **Other Current Assets** | |
| Due to/from Shareholder | 1,497,907.60 |
| **Total Other Current Assets** | 1,497,907.60 |
| **Total Current Assets** | 1,500,727.98 |
| **Fixed Assets** | |
| Accumulated Depreciation | -2,666,651.00 |
| Building Property | 1,194,677.85 |
| Computer Equipment | 99,058.75 |
| Furniture and Equipment | 460,877.44 |
| Hardware Server | 120,051.68 |
| Leased Equipment | 5,668,455.40 |
| Patent and Trademark | 450.00 |
| **Total Fixed Assets** | 4,876,920.12 |
| **Other Assets** | |
| Deposit - Korea Office | 16,370.74 |
| Deposit - SCE&G | 2,640.00 |
| Due to/from Fiber Galaxy | 215,166.05 |
| Due to/from Seven & Rose LLC | 553,538.33 |
| **Total Other Assets** | 787,715.12 |
| **TOTAL ASSETS** | 7,165,363.22 |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| Credit Cards | 92,458.08 |
| **Other Current Liabilities** | |
| Loan - PayPal | 4,821.37 |
| Loan - TBG Funding | 675,000.00 |
| Loans - Capital Lease | 3,651,005.72 |
| **Payroll Liabilities** | |
| Payroll Tax Payable | 16,268.40 |
| **Total Payroll Liabilities** | 16,268.40 |
| **Total Other Current Liabilities** | 4,347,095.49 |
| **Total Current Liabilities** | 4,439,553.57 |
| **Long Term Liabilities** | |
| Due to/from Border Tech LLC | 399,980.89 |
| Due to/from Contina Comm. LLC | 636,930.08 |
| Due to/from Fairway Network Inc | 366,501.80 |
| Due to/from OppoBox LLC | 699,145.75 |
| Due to/from Queen Systems Inc | 437,646.30 |
| Due to/from Roya Hosting | 629,253.65 |
| Due to/from Telentia LLC | 945,532.73 |
| Due to/from Tolpa Trading LTD | 1,314,030.32 |
| Due to/from Univera Network LLC | 243,528.78 |
| Due to/from Virtuzo LLC | 1,589,895.20 |
| **Total Long Term Liabilities** | 7,262,445.50 |
| **Total Liabilities** | 11,701,999.07 |
| **Equity** | |
| Members Equity | -2,396,593.57 |
| Net Income | -2,140,042.28 |
| **Total Equity** | -4,536,635.85 |
| **TOTAL LIABILITIES & EQUITY** | 7,165,363.22 |

# Exhibit 7

Case 1:21-cv-01594-RBJ   Document 35   Filed 01/20/22   USDC Colorado   Page 36 of 62
Case 1:19-cr-00441-RMG   Date Filed 01/17/23   Entry Number 158-13   Page 38 of 64
Case 20-03757-jw   Doc 125   Filed 01/18/22   Entered 01/18/22 09:08:19   Desc Main
Document      Page 1 of 4

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

IN RE:

**Seven and Rose, LLC,**                                    Case # 20-03757-jw

                         **Debtor.**                                    **Chapter 11**

## NOTICE AND APPLICATION FOR SETTLEMENT AND COMPROMISE

**TO: ALL CREDITORS AND PARTIES IN INTEREST**

Seven and Rose, LLC ("Debtor") has filed papers with the court to approve the compromise or settlement described herein.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have on in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in this motion and application, or you want the court to consider your views on the application, then within twenty-one (21) days of service of this notice, you or your attorney must:

File with the court a written response, return, or objection at:

1100 Laurel Street
Columbia, SC 29201

Responses, returns, or objections filed by an attorney must be electronically filed in ecf.scb.uscourts.gov.

If you mail your response, return, or objection to the court for filing, you must mail it early enough so the court will **receive it** on or before the date stated above.

Case 1:21-cv-01594-RBJ   Document 35   Filed 01/20/22   USDC Colorado   Page 37 of 62
Case 2:19-cr-00443-RMG   Date Filed 01/17/22   Entry Number 158-18   Page 39 of 64
Case 20-03757-jw   Doc 125   Filed 01/18/22   Entered 01/18/22 09:08:19   Desc Main
Document   Page 2 of 4

You must also send a copy to:

     Christine E. Brimm, Esq.
     Barton Brimm, PA
     P.O. Box 14805
     Myrtle Beach, SC 29587
     Attorney for Trustee
     and Attorney for Seven and Rose, LLC

     Pension Benefit Guaranty Corporation
     Office of the General Counsel
     Attn:  Andrew Philip Walker, Esq.
     1200 K Street, NW, Suite 340
     Washington, DC  20005

     With a copy by email to Walker.Andrew@pbgc.gov

Attend the hearing scheduled to be heard on **February 23, 2022 at 10:30 am, at 145 King Street, Room 225, Charleston, South Carolina.** No further notice of this hearing will be given.

If no response, return, and/or objection is timely filed and served, no hearing will be held on this Application, except at the direction of the judge.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or application and may enter an order granting that relief prior to the scheduled hearing date, if determined to be appropriate.

NATURE OF DISPUTE:  On October 28, 2019, Amir Golestan Parast a/k/a Amir Golestan filed a voluntary chapter 11 bankruptcy petition, and the case was converted to chapter 7 on February 14, 2020, Case No. 19-05657-dd (the "Golestan Bankruptcy").  Upon conversion to chapter 7, Michelle L. Vieira (the "Trustee") was appointed as the chapter 7 trustee of the Golestan Bankruptcy.  The Debtor was the 100% member of Seven and Rose, LLC ("Seven/Rose") and Micfo, LLC ("Micfo"), and Michelle L. Vieira acquired, as trustee, the 100% beneficial interest in both companies.

On October 5, 2020, Seven/Rose filed a voluntary chapter 11 bankruptcy petition, Case No. 20-03757-jw (the "Seven/Rose Bankruptcy").  PBGC asserts that Seven/Rose is liable for unfunded benefit liabilities of the Micfo Cash Balance Plan (the "Pension Plan"), and for insurance premiums with respect to the Pension Plan.  The Pension Plan was created by Micfo, and PBGC asserts that Seven/Rose is jointly liable with Micfo as a member of Micfo's controlled group.  On April 5, 2021, Pension Benefit Guaranty Corporation ("PBGC") filed Proof of Claim 5 in the Seven/Rose Bankruptcy in the contingent amount of $1,124,236.00 for unfunded benefit liabilities, and filed Proof of Claim 6 in an unliquidated amount for premiums due to PBGC.  On August 13, 2021, the Debtor filed an Objection to PBGC's Claim 5 and Claim 6.

Case 1:21-cv-01594-RBJ   Document 35   Filed 01/20/22   USDC Colorado   Page 38 of 62
Case 1:19-cr-00441-RMG   Date Filed 05/17/23   Entry Number 158-18   Page 40 of 64
Case 20-03757-jw   Doc 125   Filed 01/18/22   Entered 01/18/22 09:08:19   Desc Main
Document     Page 3 of 4

PBGC has issued to Micfo a Notice of Determination that the Pension Plan must be terminated under 29 U.S.C. § 1342. PBGC has proposed that the Pension Plan be terminated by agreement rather than by Court order, but Micfo has not executed an agreement to terminate the Pension Plan (the "Trusteeship Agreement"). On or about November 18, 2021, both Amir Golestan and Micfo pleaded guilty to 20 counts of wire fraud. Amir Golestan is awaiting sentencing. All internet IP addresses that had been issued to Micfo were revoked on or about November 23, 2021, effectively ending all business operations of Micfo. On December 29, 2021, Amir Golestan resigned as the manager of Micfo. Micfo is a manager-managed limited liability company and currently has no manager. Prior to the guilty pleas, Micfo was attempting to terminate the Pension Plan itself through a standard termination.

AMOUNT DISPUTED:  Since filing its Claims, PBGC has obtained additional data regarding the pension liability, and now asserts that the unfunded benefit liabilities are approximately $427,701, the unpaid pension insurance premiums to be less than $2,000, and the termination premiums are approximately $22,500.

PROPOSED SETTLEMENT OR COMPROMISE:  The Debtor and PBGC have agreed that PBGC shall receive a single payment in the amount of $80,000 in satisfaction of Claims 5 and 6.  The Trustee will promptly file an appropriate pleading in the Golestan Bankruptcy seeking authority to execute the Trusteeship Agreement on behalf of Micfo.  This settlement is conditioned on such authorization granted to the Trustee in the Golestan Bankruptcy.  The Trustee agrees to execute the Trusteeship Agreement and delivering it to PBGC upon the court's authorization allowing her to do so.  Subject to the stated condition, this is a full and final settlement of PBGC's Claim 5 and Claim 6 in the Seven/Rose Bankruptcy.  Except for the settlement requirements, PBGC releases the Debtor and the Debtor's estate from any and all liability.

BENEFIT TO THE ESTATE: This settlement will avoid the further expense of attorneys' fees, discovery, and the possible need to employ an expert witness as to the contested matter involving the objection to PBGC's claims. It reduces the estate's liability to a sum-certain, in an amount much less than what would be at risk should a trial result in an adverse decision for the estate.

MOVING PARTIES: Christine E. Brimm, Esq.
Barton Brimm, PA
P.O. Box 14805
Myrtle Beach, SC 29587

Pension Benefit Guaranty Corporation
Office of the General Counsel
Attn:  Andrew Philip Walker, Esq.
1200 K Street, NW, Suite 340
Washington, DC  20005

Case 1:21-cv-01594-RBJ   Document 85   Filed 01/20/22   USDC Colorado   Page 39 of 62
Case 2:19-cr-00441-RMG   Date Filed 05/17/23   Entry Number 158-18   Page 41 of 64
Case 20-03757-jw   Doc 125   Filed 01/18/22   Entered 01/18/22 09:08:19   Desc Main
Document      Page 4 of 4

WHEREFORE, with the agreement and consent of the Pension Benefit Guaranty Corporation, the moving party requests the Court issue an Order authorizing the settlement and compromise and such other and further relief as may be proper.

Respectfully submitted this 18th day of January, 2022.

WE SO MOVE AND CONSENT.

BARTON BRIMM, PA

By: /s/ Christine E. Brimm
Christine E. Brimm, #6313
P.O. Box 14805
Myrtle Beach, SC  29587
(803) 256-6582
cbrimm@bartonbrimm.com
Attorney for Trustee and Attorney
for Seven and Rose, LLC

COREY F. ELLIS
UNITED STATES ATTORNEY

By /s/ J. Douglas Barnett
    J. DOUGLAS BARNETT (#2144)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Telephone: (803) 929-3000
Facsimile: (803) 252-2759
E-mail: doug.barnett@usdoj.gov

and

PENSION BENEFIT GUARANTY CORPORATION

By /s/Andrew Philip Walker
F. Russell Dempsey, General Counsel
Kartar S. Khalsa, Deputy General Counsel
Stephanie Thomas, Assistant General Counsel
Andrew Philip Walker, Attorney (*Admitted Pro Hac Vice*)
Office of the General Counsel
1200 K Street, NW, Suite 340
Washington, DC  20005
(202) 321-0641

Attorneys for Pension Benefit Guaranty Corporation

Exhibit 8

**Amir Golestan**

| | |
|---|---|
| **Subject:** | RE: Plan termination - wire of funds |
| **Date:** | Monday, July 26, 2021 at 11:13:29 AM Eastern Daylight Time |
| **From:** | Christine Brimm <cbrimm@bartonbrimm.com> |
| **To:** | Amir Golestan <contact@amirgolestan.com> |
| **CC:** | Trustee@chapter7.email <Trustee@chapter7.email>, 'Bob Faulkner (bfaulkner@fandt.biz)' <bfaulkner@fandt.biz> |
| **Attachments:** | image001.png, image002.jpg |

Thank you -

Thank you,
Christie

**Christine E. Brimm, Esq.**
*Certified Specialist in Bankruptcy Law*
*Certified Mediator*
*SubChapter V Trustee*
**Barton Brimm, PA**
**803.256.6582 (office)**

**From:** Amir Golestan <contact@amirgolestan.com>
**Sent:** Monday, July 26, 2021 11:13 AM
**To:** Christine Brimm <cbrimm@bartonbrimm.com>
**Cc:** Trustee@chapter7.email; 'Bob Faulkner (bfaulkner@fandt.biz)' <bfaulkner@fandt.biz>
**Subject:** Re: Plan termination - wire of funds

Christie,

The funds have been released and subsequently wired to Maxus. See attached wire confirmation.

Many thanks,
Amir.

**From:** Christine Brimm <cbrimm@bartonbrimm.com>
**Date:** Thursday, July 22, 2021 at 10:52 AM
**To:** Amir Golestan <contact@amirgolestan.com>
**Cc:** "Trustee@chapter7.email" <Trustee@chapter7.email>, "'Bob Faulkner (bfaulkner@fandt.biz)'" <bfaulkner@fandt.biz>
**Subject:** RE: Plan termination - wire of funds

Amir,

Can you please see if the hold has been lifted so that you can send this wire today?

Thank you,
Christie

**Christine E. Brimm, Esq.**
*Certified Specialist in Bankruptcy Law*
*Certified Mediator*

*SubChapter V Trustee*
**Barton Brimm, PA**
**803.256.6582 (office)**

**From:** Amir Golestan <contact@amirgolestan.com>
**Sent:** Tuesday, July 20, 2021 1:57 PM
**To:** Christine Brimm <cbrimm@bartonbrimm.com>
**Cc:** Trustee@chapter7.email; 'Bob Faulkner (bfaulkner@fandt.biz)' <bfaulkner@fandt.biz>
**Subject:** Re: Plan termination - wire of funds

Christie,

It appears that the deposit is on hold pending verification. How was the funds deposited, cash or wire? See attached screenshot.

Essentially since the funds are on hold I'm unable to send the transfer yet. I'll check again by end of the day. FYI, I don't believe there's an imminent risk of any creditor freezing the funds.

Many thanks,
Amir.

**From:** Christine Brimm <cbrimm@bartonbrimm.com>
**Date:** Tuesday, July 20, 2021 at 1:21 PM
**To:** Amir Golestan <contact@amirgolestan.com>
**Cc:** "Trustee@chapter7.email" <Trustee@chapter7.email>, "'Bob Faulkner (bfaulkner@fandt.biz)'" <bfaulkner@fandt.biz>
**Subject:** Plan termination - wire of funds

Amir,

The funds have been deposited into the Micfo account by Michelle. Here is the wiring information for the actuary firm:

Here is the account info for the wire transfer payment-

Routing – 026009593
Acct – 237029885668

Here is our contact:

**Nick Novoselich, CPC, QPA**
Principal



15720 Brixham Hill Avenue, Suite 300 Charlotte, N.C. 28277
**Direct:** 704.778.0620 • **Fax:** 855.309.9244 • Get to know us!
Have sensitive data to send? Click here to send information securely

*Internal Sales Consultant*
**Jasmin Worthy** • 704.318.3001 • jworthy@maxusplans.com

Thank you! Amir, please let us know when you have made the wire transfer to Nick.

Christie



Christine E. Brimm, Esq.
*Certified Specialist in Bankruptcy Law*
*Certified Mediator*
*SubChapter V Trustee*
BARTON BRIMM, PA
1500 Highway 17 Business North, STE 214
Surfside Beach, SC 29575
<u>Mailing</u>: Post Office Box 14805, Myrtle Beach, SC 29587
803.256.6582 (office)
803.779.0267 (facsimile)
<u>www.bartonbrimm.com</u>



Exhibit 9

Case 1:21-cv-01584-RBJ   Document 35   Filed 01/20/22   USDC Colorado   Page 45 of 62
Case 2:19-cr-00431-RMG   Date Filed 03/17/23   Entry Number 158-18   Page 47 of 64
Case 19-05657-dd   Doc 460   Filed 04/27/21   Entered 04/27/21 14:19:02   Desc Main
Document      Page 1 of 4

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

**IN RE:**

**Amir Golastan Parast a/k/a Amir Golestan,**

**Debtor.**

**Case # 19-05657-dd**

**Chapter 7**

---

### NOTICE AND APPLICATION FOR TRUSTEE TO SELL CERTAIN FURNITURE AND PERSONAL PROPERTY BELONGING TO MICFO, LLC., FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO HER AUTHORITY AS HOLDER OF THE RIGHTS AND POWERS OF SOLE MEMBER OF MICFO

**TO:    All Creditors and Parties in Interest**

Michelle L. Vieira, Chapter 7 Trustee for Amir Golastan Parast a/k/a Amir Golestan ("Debtor"), has filed papers with the court for authorization to sell property described herein in her capacity as the holder of the rights and powers as sole member of MICFO, LLC..

**<u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in this motion and application, or you want the court to consider your views on the application, then within twenty-one (21) days of service of this notice, you or your attorney must:

File with the court a written response, return, or objection at:

1100 Laurel Street
Columbia, SC 29201

Responses, returns, or objections filed by an attorney must be electronically filed in ecf.scb.uscourts.gov.

If you mail your response, return, or objection to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also send a copy to:

Christine E. Brimm, Esq.
Barton Brimm, PA
P.O. Box 14805
Myrtle Beach, SC  29587

Case 1:21-cv-01594-RBJ   Document 35   Filed 01/20/22   USDC Colorado   Page 46 of 62
Case 1:19-cr-00441-RMG   Date Filed 05/17/23   Entry Number 158-18   Page 48 of 64
Case 19-05657-dd   Doc 460   Filed 04/27/21   Entered 04/27/21 14:19:02   Desc Main
Document   Page 2 of 4

Attend the hearing scheduled to be heard on **May 25, 2021 at 9:00 a.m., at King and Queen Building, 145 King Street, Room 225, Charleston, SC 29401.**

If no response, return, and/or objection is timely filed and served, no hearing will be held on this Application, except at the direction of the judge.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or application and may enter an order granting that relief prior to the scheduled hearing date, if determined to be appropriate.

## <u>BACKGROUND AND SUMMARY OF RELIEF REQUESTED:</u>

The Trustee seeks to sell certain furniture and personal property belonging to MICFO, LLC., as further described herein.

The Trustee acquired a 100% membership interest in Seven and Rose, LLC ("Seven/Rose") and in MICFO, LLC. ("Micfo") in connection with the within chapter 7 bankruptcy case. Seven/Rose is a debtor-in-possession in a pending chapter 11 bankruptcy case, Case No. 20-03757-jw (the "Chapter 11 Case"). Seven/Rose owns commercial real estate located at 198 East Bay Street, Charleston, South Carolina 29401, consisting of Suites 200 and 300. Micfo is the title owner of Suite 201 (the "Micfo Unit").

The Trustee, in her role as the holder of the rights and powers of the sole member of Seven/Rose, has been authorized to sell the above described property in the Chapter 11 Case to Flexspace 360, LLC ("Flexspace"). In conjunction therewith, the Trustee has obtained authority from this Court to sell the Micfo Unit to Flexspace. (*See* Order at Docket No. 446.)

Flexspace has made an offer to purchase certain furniture and mounted televisions (the "Micfo Assets," further defined below) which are located on the premises of the commercial property described above. All of the items belong to Micfo.

The Amended and Restated Operating Agreement for Micfo provides, in Section 6.3(d), that "except as otherwise allowed in the ordinary course of business operations, the Member shall have the sole and exclusive right and authority to authorize the sale, liquidation, transfer, exchange or disposition of any of the assets of [Micfo]."

The Trustee is informed and believes that she is authorized to sell the Micfo Assets by the rights and powers granted to the sole member through Micfo's operating agreement. The Trustee further is informed and believes that the sale of the Micfo Assets will confer an indirect benefit on this bankruptcy estate, by facilitating the sale and closing of the Seven/Rose property. In addition, the sale of the Micfo Assets will generate funds for Micfo which can be used to bring tax filings for Micfo up to date, and/or to pay legitimate creditors of Micfo, all of which will assist the Trustee in her determination whether to liquidate Micfo for the benefit of this bankruptcy estate or whether to seek a sale of the estate's membership interest in Micfo. The sale of the Micfo

Assets will also avoid an expenditure of funds by Micfo to move and store the Micfo Assets. Based on the Trustee's review of Micfo's current cash flow, Micfo has very limited funds, and its use of funds will be better served paying its debts rather than incurring additional liabilities.

TYPE OF SALE:  Private sale, subject to higher and better bids.

PROPERTY TO BE SOLD:
      (a)     The furniture and televisions "AS IS" located on the premises at 198 East Bay Street, Charleston, South Carolina 29401, County of Charleston, Suites 200, 201 and 300 (the "Commercial Property"), more specifically described and limited as follows (the "Micfo Assets"):

> 1.  Furniture to include all chairs, desks, communal tables, conference tables, couches, and the reception stand, but excluding the bar stools.
>
> 2.  The televisions that are mounted to the walls.
>
> 3.  White Boards that are mounted to the walls.

      (b)     The sale includes only the items in (a)(1), (2) & (3) above. No other contents located at the Commercial Property will convey. In addition to the bar stools, the sale specifically excludes rugs, computers, monitors, servers, computer accessories, and other personal property of any nature.

PRICE:  $30,000.00

APPRAISAL VALUE:  Unknown. It is used furniture and TVs in a commercial office space.

BUYER:  Flexspace 360, LLC. This is the the same buyer who is purchasing the Commercial Property.

PLACE AND TIME OF SALE:  Closing will take place on or before March 31, 2021, in conjunction with the sale of the Commercial Property.

SALES AGENT:  N/A

ESTIMATED TRUSTEE'S COMPENSATION:  N/A

LIENS/MORTGAGES/SECURITY INTERESTS ENCUMBERING PROPERTY:
     a.  TBG Funding, LLC ("TBG") has a UCC security interest in the contents of the Commercial Property. However, TBG is anticipated to be paid in full from the sale of the Commercial Property.
     b.  Numerous parties have filed UCC-1 Financing Statements as to various items of personal property belonging to Micfo. None of the UCCs appear to cover

Case 1:21-cv-01594-RBJ   Document 35   Filed 01/20/22   USDC Colorado   Page 48 of 62
Case 2:19-cr-00441-RMG   Date Filed 02/17/23   Entry Number 158-13   Page 50 of 64
Case 19-05657-dd   Doc 460   Filed 04/27/21   Entered 04/27/21 14:19:02   Desc Main
Document   Page 4 of 4

the Micfo Assets at issue.  Out of abundance of caution, each of the UCC lien holders have been provided notice of this sale.

DEBTOR'S EXEMPTION:  N/A

PROCEEDS ESTIMATED TO BE PAID TO THE ESTATE:  The estate is not expected to realize any sale proceeds from the sale of the Micfo Assets. However, the benefit to the estate is to facilitate the closing of the sale of the Seven/Rose property, which is expected to generate enough funds for Seven/Rose to make a member distribution to this chapter 7 bankruptcy estate.  In addition, the estate will indirectly benefit if Micfo generates funds from this sale which will enable it to bring its taxes up to date and/or pay legitimate creditors, all of which will assist the Trustee in her analysis and valuation of Micfo.

STAY OF ORDER:  The Trustee does not request waiver of the 14-day stay with regard to the order authorizing the sale.

The Trustee is informed and believes that it would be in the best interests of the Debtor's estate to sell the Micfo Assets as described herein.  Applicant also believes that the indirect benefit to the estate that is anticipated from the sale of the Micfo Assets justifies its sale and the filing of this application.

The Trustee may seek appropriate sanctions or other similar relief against any party filing a spurious objection to this notice and application.

WHEREFORE, the Trustee requests the Court issue an order authorizing the Trustee to sell the Micfo Assets, free and clear of liens, claims, interests, and encumbrances, in her capacity as the Chapter 7 Trustee of this Bankruptcy Estate and as the holder of the rights and powers as sole member of Micfo, and such other and further relief as may be proper.

BARTON BRIMM, PA

BY:    /s/Christine E. Brimm
Christine E. Brimm, #6313
Attorney for the Trustee
P. O. Box 14805
Myrtle Beach, South Carolina 29587
Tele: (803) 256-6582
Fax: (803) 779-0267
Cbrimm@bartonbrimm.com

April 27, 2021

# Exhibit 10

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE:                                    )
                                          )         C/A 19-05657-dd
Amir Golastan Parast a/k/a Amir Golestan, )
                                          )         Chapter 7
_____   )

### AMENDED OBJECTION OF ASCENTIUM CAPITAL, LLC AND PNCEF, LLC TO NOTICE AND APPLICATION FOR TRUSTEE TO SELL CERTAIN FURNITURE AND PERSONAL PROPERTY BELONGING TO MICFO, LLC., FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, PURSUANT TO HER AUTHORITY AS HOLDER OF THE RIGHTS AND POWERS SOLE MEMBER OF MICFO

The undersigned, on behalf of Ascentium Capital, LLC ("Ascentium") and PNCEF, LLC ("PNC" and together with Ascentium "Micfo Creditors"), hereby files an Objection to the Notice and Application for Sale as identified above ("Sale Motion"), filed on April 27, 2021. In support of this Objection, the Micfo Creditors state and would show as follows:

1.    The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on October 28, 2019.

2.    The case was converted to a case administered under Chapter 7 of the Bankruptcy Code on February 14, 2020, and Michelle Vieira was appointed Chapter 7 Trustee.

3.    The property proposed to be sold are assets of the Micfo, LLC. ("Micfo"), a South Carolina limited liability corporation.   Micfo has not filed a Bankruptcy Petition.

4.    Ascentium and PNC[1] are both creditors of Micfo,[2] holding judgments entered against Micfo in Charleston County, South Carolina.

---

[1] PNC obtained a judgment against Micfo on February 24, 2020.  PNC later released its judgment lien as to the real property being sold by the Trustee.
[2] Ascentium obtained a judgment against Micfo on April 13, 2020, and currently holds a lien on real property being sold by the Trustee.

1

5.      Section 363 of the Bankruptcy Code authorizes the Trustee to sell estate assets, or even assets that are co-owned by the Debtor and another, but the Sale Motion does not seek to sell estate assets., but rather assets of Micfo. Those assets are not assets of the estate. *See* 11 U.S.C. §541.  See also, In re Brittain, 435 B.R.318, 322 (Bankr. D.S.C.  2010) (holding that an individual's bankruptcy estate has an interest in the shares of the company rather than the company's property).

6.      The Trustee proposing to sell the property under her authority as "holder of the rights and powers of sole member of Micfo.'  However, "members of an LLC have no property interest in the property owned by the LLC." *Id*. at 320.  A debtor's interest in the shares of a corporation does not bring the corporation's property into the bankruptcy estate.  Johnson v. North Mill Credit,  (In re Johnson), 608 B. R. 784, 786 (Bankr. S.D. Ga. 2019).

WHEREFORE, the Micfo Creditors request that the Court deny the Application to Sell and allow such other and relief as the Court deems just and proper.

Charleston, South Carolina
May 19, 2021

*/s/ J. Ronald Jones, Jr.*
J. Ronald Jones, Jr. (5874)
Smith Debnam Narron Drake Saintsing
  & Myers, LLP
171 Church Street, Suite 120C (29401)
P. O. Box 22795
Charleston, SC 29413
Telephone:  (843) 714-2535
Facsimile: (843) 714-2535
rjones@smithdebnamlaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE:                                    )
                                          )       C/A 19-05657-dd
Amir Golastan Parast a/k/a Amir Golestan, )
                                          )       Chapter 7
                                          )
_____ )

## Certificate of Service

I, Crystal Patrick, paralegal for J. Ronald Jones, Jr., of SMITH DEBNAM NARRON DRAKE SAINTSING & MYERS, LLP, Attorneys at Law, hereby certify:

That I am, and at all times hereinafter-mentioned was, more that eighteen (18) years of age;

That on this day, I served copies of the foregoing *Amended Objection to Notice and Application for Trustee to Sell Certain Furniture and Personal Property Belonging to Micfo, LLC,* upon the following by service through the CM/ECF system and/or by mailing a copy thereof, postage prepaid:

Amir Golastan Parast a/k/a Amir Golestan
4639 Wilson Road
Meggett, SC 29449
*Debtor*

Michael H. Conrady
890 Johnnie Dodds Blvd.
Mt. Pleasant, SC 29465
Columbia, SC 29201
*Counsel for Debtor*

Michelle L. Vieira
PO Box 1480
Murrells Inlet, SC 29576
*Trustee*

Christine E. Brimm
Barton Brimm, PA
PO Box 14805
Myrtle Beach, SC 29587

US Trustee
Strom Thurmond Federal Building
1835 Assembly Street, Suite 953
Columbia, SC 29201

Case 1:21-cv-01594-RBJ   Document 35   Filed 01/20/22   USDC Colorado   Page 53 of 62
Case 19-05657-dd   Doc 474   Filed 05/19/21   Entered 05/19/21 12:05:11   Desc Main
Document    Page 4 of 4

2:19-cr-00441-RMG   Date Filed 01/17/23   Entry Number 158-18   Page 55 of 64

J. Kershaw Spong, Esq.
Robinson Gray Stepp & Laffitte, LLC
PO Box 11449
Columbia, SC 29211
*Attorney for TBG Funding, LLC*

M. Kevin McCarrell
Fox Rothschild, LLP
2 West Washington Street, 1100
Greenville, SC 29601
*Attorney for South State Bank*

Daniel J. Reynolds, Jr.
McCarthy Reynolds & Penn, LLC
1517 Laurel Street
Columbia, SC 29201
*Attorney for Kristin M. Golestan*

I certify under penalty of perjury that the foregoing is true and correct.

  This the 19th day of May, 2021.

        /s/Crystal D. Patrick
        Crystal D. Patrick, Paralegal to
        J. Ronald Jones, Jr., Fed. ID No.: 5874
        Smith Debnam Narron Drake Saintsing & Myers
        171 Church Street, Suite 120C
        Charleston, SC 29401

# Exhibit 11

Case 1:21-cv-01504-RBJ   Document 35   Filed 01/20/22   USDC Colorado   Page 55 of 62
2:19-cr-00441-RMG   Date Filed 05/17/23   Entry Number 158-19   Page 57 of 64
Case 19-05657-dd   Doc 478   Filed 05/26/21   Entered 05/26/21 14:47:04   Desc Main
Document   Page 1 of 3

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

IN RE:

**Amir Golastan Parast a/k/a Amir Golestan,**

**Debtor.**

**Case # 19-05657-dd**

**Chapter 7**

### CONSENT ORDER AUTHORIZING TRUSTEE TO SELL CERTAIN FURNITURE AND PERSONAL PROPERTY BELONGING TO MICFO, LLC., FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO HER AUTHORITY AS HOLDER OF THE RIGHTS AND POWERS OF SOLE MEMBER OF MICFO

THIS MATTER comes before the Court on the notice and application of Michelle L. Vieira, Chapter 7 Trustee ("Trustee") for Amir Golastan Parast a/k/a Amir Golestan ("Debtor"), for authority to sell free and clear of liens the certain furniture and televisions as described herein, in the exercise of her rights and powers as Trustee in this bankruptcy case, and in the exercise of the rights and powers of the sole member of MICFO, LLC. a/k/a Micfo, LLC ("Micfo").

The Trustee acquired a 100% membership interest in Seven and Rose, LLC ("Seven/Rose") and in Micfo in connection with the within chapter 7 bankruptcy case. Seven/Rose is a debtor-in-possession in a pending chapter 11 bankruptcy case, Case No. 20-03757-jw (the "Chapter 11 Case"). Seven/Rose owns commercial real estate located at 198 East Bay Street, Charleston, South Carolina 29401, consisting of Suites 200 and 300. Micfo is the title owner of Suite 201, further being shown and designated as PIN: 458-05-04-020 (the "Micfo Unit"). The Trustee has been authorized by previous orders in this case and in the Chapter 11 Case to sell Suites 200, 201 and 300 (the "Commercial Property") to Flexspace 360, LLC and/or its assigns ("Flexspace"). The Trustee now seeks authority to sell to Flexspace the following furniture and televisions "AS IS" located on the premises of the Commercial Property, more specifically described and limited as follows (the "Micfo Assets"):

1. Furniture to include all chairs, desks, communal tables, conference tables, couches, and the reception stand, but <u>excluding</u> the bar stools.

2. The televisions that are mounted to the walls.

3. White Boards that are mounted to the walls.

The sale includes only the items in (1), (2) & (3) above. No other contents located at the Commercial Property will convey. In addition to the bar stools, the sale specifically <u>excludes</u> rugs, computers, monitors, servers, computer accessories, and other personal property of any nature.

1

The Court has been informed that all parties in interest have been notified of the intention to sell the Micfo Assets. The only objection to the proposed sale that was filed was a jointly filed objection, as amended, by Ascentium Capital, LLC ("Ascentium") and PNC EF, LLC ("PNC"), disputing the Trustee's right to sell the Micfo Assets.   The Court has been informed that the objection of Ascentium and PNC is resolved by the consent of the parties with this Order.

It is therefore,

ORDERED, ADJUDGED, AND DECREED, that the Trustee holds the rights and powers of the sole member of Micfo.

IT IS ORDERED that the Trustee is authorized to sell and to convey the Micfo Assets, on behalf of Micfo, to Flexspace 360, LLC and/or its assigns for $30,000.00.

IT IS ORDERED that the Trustee, on behalf of Micfo, will pay the aggregate amount of $15,000.00 of the sale proceeds from the Micfo Assets to Ascentium and PNC, made payable to Smith Debnam Trust Account.

IT IS ORDERED that neither Ascentium nor PNC will take any step to attach any portion of the remaining proceeds from the sale of the Micfo Assets, which proceeds belong to Micfo and will be utilized for Micfo's purposes as the Trustee, as member of Micfo, directs.

IT IS ORDERED that neither Ascentium nor PNC will participate as a petitioning creditor nor encourage other creditors to file an involuntary bankruptcy proceeding against Micfo until such time as the Golestan bankruptcy estate is closed or the Trustee abandons the Micfo asset, whichever occurs first.

IT IS FURTHER ORDERED that the sale of the Micfo Assets shall be free and clear of all liens, claims, encumbrances and interests.

IT IS SO ORDERED.

**FILED BY THE COURT**
**05/26/2021**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 05/26/2021

We consent:

BARTON BRIMM, PA


/s/ Christine E. Brimm
Christine E. Brimm, #6313
P.O. Box 14805
Myrtle Beach, SC  29587
Phone:  (803) 256-6582
cbrimm@bartonbrimm.com
Attorney for Trustee



/s/ J. Ronald Jones, Jr.
J. Ronald Jones, Jr. (#5874)
Smith Debnam Narron Drake Saintsing
   & Myers, LLP
171 Church Street, Suite 120C (29401)
Post Office Box 22795
Charleston, SC 29413
Telephone:  (843) 714-2535
rjones@smithdebnamlaw.com
*Attorneys for Ascentium Capital, LLC and
PNC EF, LLC*

.

3

Exhibit 12

**Amir Golestan**

| | |
|---|---|
| **Subject:** | Re: setting up pension account funding |
| **Date:** | Monday, October 4, 2021 at 1:01:54 PM Eastern Daylight Time |
| **From:** | Amir Golestan <contact@amirgolestan.com> |
| **To:** | Christine Brimm <cbrimm@bartonbrimm.com> |
| **CC:** | Michelle Vieira <Trustee@chapter7.email> |
| **Attachments:** | image001.jpg |

Christie,

I'm happy to sign any paperwork necessary with opening the account, but have no prior knowledge of how-to. If Nick can help great.

Also, as of today Micfo's available balance is $9,163.95. At the beginning of the month I paid myself the salary, and today I wired $5,000 to Hood Law Firm as retainer towards representing Micfo in the Colorado case. They have utilized almost the entire amount already. So when you say $20,000 in initial funding, I'm unaware as to how we can make this happen.

Micfo is anticipated the $18,000 monthly recurring payment from Braveway between 15-20th of each month. That would bring the available balance to roughly $27,000 which would be enough to cover the $20,000 initial funding, but not enough to cover my salary of $12,000 at the beginning of the month.

Just wanted to put this on your radar.

Many thanks,
Amir.

**From:** Christine Brimm <cbrimm@bartonbrimm.com>
**Date:** Monday, October 4, 2021 at 12:52 PM
**To:** Amir Golestan <contact@amirgolestan.com>, Nick Novoselich <nick@maxusplans.com>
**Cc:** Michelle Vieira <Trustee@chapter7.email>
**Subject:** setting up pension account funding

Nick,

Micfo is going to begin funding an account for the pension liabilities with an initial funding amount of $20,000.  Is this something you can assist Amir in setting up?

Amir, please confirm when the pension account has been set up per our conversation last month.

Thank you
Christie



Christine E. Brimm, Esq.
*Certified Specialist in Bankruptcy Law*
*Certified Mediator*

*SubChapter V Trustee*
Barton Brimm, PA
1500 Highway 17 Business North, STE 214
Surfside Beach, SC 29575
<u>Mailing</u>: Post Office Box 14805, Myrtle Beach, SC 29587
803.256.6582 (office)
803.779.0267 (facsimile)
<u>www.bartonbrimm.com</u>

# Exhibit 13

Date: December 29th, 2021

Amir Golestan
2850 Jasper Blvd.
Sullivan's Island, SC 29482
Email: contact@amirgolestan.com
Phone: 212-200-2222

Michelle L. Vieira
Chapter 7 Trustee for Amir Golestan Parast
P.O. Box 1480 Murrells Inlet, SC 29576

## RE: Notice of Resignation

Dear Ms. Vieira,

I hereby give my immediate notice of resignation as the manager of Micfo, a Nevada corporation. I shall instruct Micfo's creditors and their litigators to contact you directly regarding matters related to their dealings with Micfo.

It also appears that Micfo's articles of incorporation have been revoked in the State of Nevada.

Many thanks,

Amir Golestan